UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CHRISTIAN HLAVINKA,

    Plaintiff,

    v.                                      Case No. 06-C-1316

CITY OF MILWAUKEE,
STEPHEN CHIN, and
RYAN HEIDEMANN,

    Defendants.

---

DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 21), AND DISMISSING CASE

This case comes before the court on defendants' motion for summary judgment seeking dismissal of all claims against the City of Milwaukee, Sergeant Stephen Chin and Officer Ryan Heidemann. For the reasons set forth in this decision, the motion will be granted and the case will be dismissed.

The complaint presents three causes of action. First, plaintiff alleges that the City of Milwaukee maintained a deficient system of training and supervision of officers related to the handling of their service weapons. Second, he contends that Sergeant Stephen Chin's action constituted tortious conduct and included the negligent supervision of his subordinate, Ryan Heidemann. Finally, plaintiff maintains that Heidemann subjected him to assault and battery, use of excessive force and intentional infliction of emotional distress for which the City of Milwaukee is liable pursuant to the Wisconsin Statutes.

## Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial burden of demonstrating that summary judgment should be granted. *Id.,* 477 U.S. at 323. Once this burden is met, the opposing party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue of material fact for trial. *Id.,* 477 U.S. at 322-24. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F. 3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

To establish that a question of fact is genuine, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the opposing party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where the record is taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255.

## Statement of Facts

Plaintiff, Christian Hlavinka began working with the Milwaukee Police Department on November 10, 1997. (Smokowicz Aff., Attach. A, 100-101, Attach. B, 5-6,

8.).  Defendant Stephen Chin was promoted to the rank of sergeant in of May 2001.  (*Id.* at  Attach. B, 5-6, 8.)  Both were assigned to District Number 5.  (*Id.*)

On January 2, 2004, Hlavinka and Police Officer Ryan Heidemann were seated in the district assembly room.  (Smokowicz Aff., Attach.  A, 101.)  Both officers were facing west, toward the windows when Sergeant Chin entered the room.  (*Id.*, at Attach. A, 102.) By that point, Officer Ryan Heidemann had Hlavinka's service weapon dismantled on the table in front of Hlavinka in approximately ten pieces.  However, officers are not trained to "field strip" their service weapons in this manner.  (*Id.*, at Attach.  A, p. 103.)

Sergeant Chin stood at the end of the table watching Hlavinka and Heidemann. (*Id.*, at Attach.  A, 103, 104.)  Heidemann  began to reassemble the weapon. (*Id.*)  With a couple of apparent problems along the way, Heidemann was able to put the gun together.  (*Id.*)

When Heidemann offered the weapon to Hlavinka, Hlavinka said he did not trust it.  (*Id.*, at Attach. A, 105.)  Hlavinka checked and determined that the gun was loaded with a magazine and a round in the chamber.  (*Id.*, at Attach.  A, 106.)  Hlavinka did not reholster the weapon and expressed his distrust of it to one or more officers nearby.  (*Id.*, at Attach. A, 106-107.)  Heidemann took back the gun, and removed the magazine and the round from the chamber.  (*Id.*, at Attach. A, 107.)  Heidemann then showed Hlavinka what Heidemann asserted was the firing pin and what Hlavinka believed was the feeder.  (*Id.*, at Attach. A,  107-108.)  Hlavinka then said that he could not trust the weapon and returned to his report.  (*Id.*, at Attach. A, 108.)  Seconds later, Hlavinka heard Heidemann "fiddling with the gun again," put his pen down, pushed his chair back, then saw the gun discharge. (*Id.*)

Johnny Santiago, a City of Milwaukee police officer for more than twenty years, was on duty in the assembly room on January 2, 2004. (*Id*., at Attach. B, 94.) While at the same table as Hlavinka and Heidemann, Santiago observed Heidemann put Hlavinka's service weapon together, hand it to Hlavinka and discuss with Hlavinka whether it worked properly. The gun was returned to Heidemann, who showed Hlavinka that the gun was working correctly. When the gun discharged, Santiago was on the opposite side of the table, facing Heidemann and Hlavinka. (*Id.,* at Attach. B, 96.)

As a result of the gun discharge, Hlavinka and Heidemann were shot and injured. (*Id.*, at Attach. A, 113-114; Attach. B, 23.) Heidemann had his hand in front of the barrel area, and Hlavinka had his hand on the table in the direction that the gun was pointed. (*Id*., at Attach. B, 96.)

Chin acknowledges that he saw Heidemann and Hlavinka at a table in the assembly room, that he noted a weapon on the table in front of Heidemann, and that the weapon was initially disassembled into a number of parts. (*Id*., at Attach. B, 17-18.) At the outset, Chin was not concerned as the officers had just confiscated a weapon for which Heidemann had inventory responsibility. (*Id.*) Chin thought Heidemann was simply looking for a modification to the weapon or a serial number. (*Id*., at Attach. B, 18-19.) At one point, Chin observed Heidemann holding the weapon, completely assembled. (*Id.*, at Attach. B, 22.) Chin realized from Heidemann's hand motion and the way that he was holding the gun that Heidemann was going to disassemble the weapon. (*Id.*) Chin started to say something, but before he could do so, the gun discharged again. (*Id.*, at Attach. B, 23.) Chin's affidavit indicated that he knew that the weapon on the table was a Glock

4

service weapon, and that it belonged to Hlavinka or Heidemann. (Simon Aff., at Attach. A and B.)

In March of 2005, Michael Kuspa was a Milwaukee Police Department Sergeant assigned to the police academy for the past five years as the range master for the department. (Smokowicz Aff., Attach. A, 24.) Kuspa was summoned to the scene of the incident on the night of the shooting because criminal investigators summon an academy instructor. (*Id.*, at 25.) In the course of his duties, Kuspa instructs police officers in the safe handling of their service weapons. (*Id.*) Further, Kuspa is responsible for determining how an incident occurred and for taking "in all the information that was given to [him] and to see if there was a training related issue that resulted from the incident...to use in further training sessions." (*Id.*, at 25-26.) He found that the weapon involved in the incident was in normal working order. (*Id.*, at 26.)

From his examination and the information available to him, Kuspa concluded that the incident occurred in one of two ways: 1) while there was no magazine in the gun, there was a live round in the chamber and Heidemann, somehow being unaware of that, attempted to remove the slide, which requires pulling the trigger. Holding the gun in his left hand, Heidemann could have had his right hand over the muzzle when he pulled the trigger, a hand position consistent with the injury he suffered; or 2) Heidemann may have pulled the slide back using his right hand, the slide may have slipped, and his left finger may have slipped onto the trigger and in a sympathetic response the left finger could have squeezed the trigger while he moved his right hand in front of the muzzle. (*Id.*, at 42-43, 49-50; Smokowicz Aff., Attach. C, 30-21.)

5

At the Milwaukee Police Academy, Kuspa taught four main principles of firearm safety that are found in a state-issued manual used to train Milwaukee Police Department recruits from 1995 to 2002: 1) assume all weapons are loaded; 2) never let the muzzle of a weapon cross anything that you are not willing to destroy; 3) keep the finger off and outside the trigger guard; and 4) always be aware of the target and what is beyond. (*Id.*, at Attach. C, 32.)

Prior to the incident, officers were taught to field strip their weapons only to a certain point. However, the weapon involved in the incident had been disassembled beyond that point. (*Id.*, at 30, 34.)

Every sworn member of the department with an issued firearm is required to attend four in-service sessions each year during which the department normally has four two-hour live fire training sessions. (*Id.*, at 33.) Officers attending those sessions disassemble their weapons at the end of the shoot and report to the cleaning room to clean their weapons. (*Id.*, at 33-34.) If there is a problem with disassembly, it is brought to the attention of the firearms instructor who would address the problem with the officer. (*Id.*, at 34.) An officer is not authorized to disassemble the weapon beyond four pieces, which include the slide, the spring, the barrel and the receiver. (*Id.,* at 35.) Officers, except armorers in the individual weapon, are taught to disassemble a weapon only to a certain point to ensure everyone's safety and ensuring that the weapon is disassembled and reassembled properly. (*Id.,* at 35-36.)

As a result of his review, Kuspa issued memoranda reminding police officers of firearm safety rules. Moreover, the department purchased and placed in each district station a firearm safety unloading device with instructions that they use it to clear any

6

firearm brought into a station by directing the firearm into the device to insure that any unwanted discharge would be captured in the device. (Smokowicz Aff., Attach. A, 29-30.)

Analysis

Hlavinka claims that the City is liable for maintaining a "deficient system" of training and supervision of officers related to the handling of their service weapons. He further claims that this deficient system failed to identify misconduct by officers and that it is the policy and custom of the City not to subject officers to close supervision and retraining.

Municipalities are "persons" for purposes of 42 U.S.C. § 1983, but liability against them cannot arise vicariously. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-692 (1978). Instead, municipalities are liable only for acts for which the entity is responsible, meaning acts the entity has embraced as policy or custom. *Id.,* 436 U.S. at 690-691, 694.

To show such responsibility, a plaintiff must prove that (1) the alleged deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the constitutional deprivation; (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent, well-settled, and known to the city as to constitute a "custom or usage" with force of law; or (3) the conduct was a decision of a municipal policymaker with final policymaking authority in the area in question. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000); *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *see Monell*, 436 U.S. at 690-91. Moreover, the plaintiff must establish a "direct causal link between a

7

municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Here, the conduct at issue is the alleged failure of the City to train and supervise its police officers. Failure to train gives rise to § 1983 liability in limited circumstances "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*, 489 U.S. at 388. Only where the failure to train reflects a deliberate or conscious choice by the municipality can it be liable for such a failure. *Id.,* 489 U.S. at 389. Hence, the court considers: 1) whether the City's training program is adequate; and if it is not, (2) whether such inadequate training can be said to represent city policy. *Id.,* 489 U.S. at 390.

That a particular officer is unsatisfactorily trained is not enough to show municipal liability, as factors other than training could have caused that officer's shortcomings. *Id.* at 390-391. Nor is it sufficient to show simply that an injury could have been avoided if an officer had certain additional training. *Id.* at 391.

Thus, to survive summary judgment on a failure to train claim, Hlavinka "must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Brown v. Muhlenberg Twp*., 269 F.3d 205, 216 (3d Cir. 2001). Further, he must demonstrate that the deficiency in training actually caused the officers' violations of his rights. *See City of Canton*, 489 U.S. at 391.

In *Brown*, the Third Circuit Court of Appeals found that although police officers received no formal training directed at the handling of dogs, the police policy manual provided the officers with guidance. 269 F.3d at 216. The *Brown* court found that

no reasonable trier of fact could conclude that the need for further guidance was so obvious as to constitute deliberate indifference by the town to the plaintiff's constitutional rights. *Id.*

This court is satisfied that no reasonable jury could find that the need for more or different training of City police officers, as it relates to the handling of their service weapons, was so obvious that the failure to have such training evidenced deliberate indifference to the rights of the plaintiff. In *City of Oklahoma City v. Tuttle*, the Supreme Court articulated that "proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . ." 471 U.S. 808, 824 (1985). Furthermore, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.* Thus, Hlavinka presents this court with no evidence other than the single incident during which he was shot by a fellow police officer, and has not shown an established pattern or series of accidental weapon discharges, let alone resulting injuries, which were ignored by the City and should have prompted an earlier change in the handling of weapons, including emptying, examination, disassembly, and testing.

Likewise, there is no viable failure to supervise claim against the City. Hlavinka maintains that there are disputed facts as to whether Chin knew the discharge gun was a service weapon rather than a weapon seized during an arrest. Regardless, it is undisputed that for most of the time that Chin was present prior the accidental discharge of the gun, the gun was disassembled and thought to be emptied of bullets. Thus, at most,

9

Case 2:06-cv-01316-CNC    Filed 03/26/10    Page 9 of 12    Document 35

the shooting in this case is a single incidence of common negligence which in no way rises to the constitutional requirement of deliberate indifference.

The remaining causes of action are brought under state law also. Hlavinka charges that Heidemann's conduct "constituted assault and battery, use of excessive force and intentional infliction of emotional distress for which the City of Milwaukee is liable pursuant to Wisconsin statutes."

Title 28 U.S.C. § 1367 provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has jurisdiction. *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (citing 28 U.S.C. § 1367(c)(3)). A district court should consider and weigh the factors of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Id.,* 29 F.3d at 1251 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir.1994). As a general rule, when all federal claims are disposed-of prior to trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Wright*, 29 F.3d at 1250 ( *citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996)).

Principles of comity and judicial economy weigh in favor of relinquishing jurisdiction, but in this instance fairness and convenience weigh in favor of the continued exercise of jurisdiction. This case has been pending for a substantial period, in part, because of Chin's deployment to Iraq. Further, the timing raises concerns that any claims brought in state court would be barred by the statute of limitations.

10

In any event, the foregoing state law claims do not survive summary judgment. Where an injury or death is compensable under the Worker's Compensation Act, Wis. Stat. Ch. 102, the affected employee is barred from any other remedy for the same injury or death not only against his or her employer, but also against a co-employee. Wis. Stat. § 102.03(2). This statute states three exceptions where a plaintiff may recover against the employer, any employee of that employer and the worker's compensation insurance carrier. Under these exceptions for recovery, a plaintiff must demonstrate that a defendant: 1) committed an assault intended to cause bodily harm; 2) negligently operated a motor vehicle not owned or leased by the employer; or 3) that there is liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

Plaintiff never responded to defendants' argument that the Worker's Compensation Statute bars recovery in this case. It is apparent on this record that the second and third exceptions are wholly inapplicable, as the facts involve neither negligent operation of a motor vehicle nor liability of a governmental unit under a collective bargaining agreement.

With respect to the first exception, the only cause of action against Chin in the complaint is a negligence claim under Wisconsin law. Hence, the first exception to the Worker's Compensation Statute would not apply because there are no allegations or facts indicating that Chin assaulted Hlavinka or intended to cause him bodily harm. The evidence clearly indicates that Hlavinka and Heidemann were injured as a result of the gun's discharge and that there was no demonstrated intent on the part of anyone to cause Hlavinka bodily harm.

In his brief in opposition to summary judgment, Hlavinka argues that defendants ignore his negligence claim against Heidemann. However, there is no negligence claim against Heidemann in the complaint. The only claim against Heidemann is for "assault and battery, use of excessive force, and intentional infliction of emotional distress" and each of these state law claims requires evidence of intent. *See* Wis JI-Civil 2005, 2725. No reasonable juror would conclude that Heidemann, who shot himself first by placing his hand over the muzzle of the gun that discharged, intentionally shot, assaulted, or inflicted emotional distress on Hlavinka. For this same reason, one cannot read into the third cause of action a federal excessive force claim because there is no evidence of deliberate indifference by Heidemann. Now, therefore,

IT IS ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that this case be dismissed.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE